1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LUIS ARMENTERO,

11                  Plaintiff,                    No. 2:10-cv-0965 KJM KJN P

12          vs.

13   K.L. DICKINSON, et al.,

14                  Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.  Introduction

17                  Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis,

18   with an action filed pursuant to 42 U.S.C. § 1983.  This action is proceeding on plaintiff's claims

19   that defendants Pappa, May, and Duncan ordered plaintiff's transfer in retaliation for his filing a

20   lawsuit against them, and that defendant Sinkovich attempted to cover-up the alleged retaliation

21   by misprocessing plaintiff's grievances.  (Dkt. No. 34.)  Defendants move for summary

22   judgment.  As set forth more fully below, this court finds that the motion for summary judgment

23   should be granted.

24   ////

25   ////

26   ////

1  II.  Defendants' Motion for Summary Judgment

2          A.  Legal Standard for Summary Judgment

3          Summary judgment is appropriate when it is demonstrated that the standard set

4  forth in Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if

5  the movant shows that there is no genuine dispute as to any material fact and the movant is

6  entitled to judgment as a matter of law. " Fed. R. Civ. P. 56(a).[1]

7              Under summary judgment practice, the moving party always bears
               the initial responsibility of informing the district court of the basis
8              for its motion, and identifying those portions of "the pleadings,
               depositions, answers to interrogatories, and admissions on file,
9              together with the affidavits, if any," which it believes demonstrate
               the absence of a genuine issue of material fact.

10

11  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

12  56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

13  only prove that there is an absence of evidence to support the non-moving party's case."  Nursing

14  Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,

15  387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory

16  Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial

17  burden of production may rely on a showing that a party who does have the trial burden cannot

18  produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

19  should be entered, after adequate time for discovery and upon motion, against a party who fails to

20  make a showing sufficient to establish the existence of an element essential to that party's case,

21  and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.

22  "[A] complete failure of proof concerning an essential element of the nonmoving party's case

23  necessarily renders all other facts immaterial."  Id. at 323.

24

25          [1]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
       2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule
26  56, "[t]he standard for granting summary judgment remains unchanged."

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

1    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

2    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

3    1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

4    show that there is some metaphysical doubt as to the material facts. . . . Where the record taken

5    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6    'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

7                    On August 17, 2012, defendants advised plaintiff of the requirements for

8    opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt.

9    No. 81 at 2-3.); see Rand, 154 F.3d at 957.

10                   B.  Undisputed Facts

11                   For purposes of the instant motion for summary judgment, the court finds the

12   following facts undisputed.

13                   1.  This action is proceeding on plaintiff's claims that defendants Pappa, May, and

14   Duncan ordered plaintiff's transfer in retaliation for his filing a lawsuit against them, and that

15   defendant Sinkovich attempted to cover-up the alleged retaliation by misprocessing plaintiff's

16   grievances.[2]  (Dkt. No. 34.)

17                   2.  Defendants Pappa, May, and Duncan were members of the Unit Classification

18   Committee ("UCC") at California Medical Facility ("CMF"), Vacaville, that recommended

19   plaintiff for transfer at his Annual Program Review on July 30, 2009.[3]

20                   3.  Defendant Pappa was a Correctional Counselor I on July 30, 2009.

21                   4.  Defendant May was a Correctional Counselor II on July 30, 2009.

22                   5.  Defendant Duncan was a Facility Captain on July 30, 2009.

23   ────────────────

24        [2]  Plaintiff included arguments concerning claims that were dismissed on November 4,
     2010.  (Dkt. No. 34.)  The court will not address those arguments.

25        [3]  As noted by defendants, the second amended complaint refers to the UCC review as
     occurring on July 30, 2010.  (Dkt. 33, passim.)  However, plaintiff uses the date July 30, 2009, in
26   his opposition, and the documentary evidence confirms the review occurred on July 30, 2009.

                                                        4

6.  Plaintiff's Annual Program Review on July 30, 2009, included a review of his central and medical files.

7.  Plaintiff participated in the July 30, 2009 Annual Program Review, and expressed his disagreement with the committee's decisions.  (Dkt. No. 81-1 at 3-4.)

8.  On January 31, 2008, an earlier UCC acted to designate plaintiff Medically Unassigned ("MUA") status pending a functional capacity evaluation pursuant to the Armstrong Remedial Plan (used to determine an inmate's physical limitations within an eight hour workday).  (Dkt. No. 81-1 at 3.)

9.  The July 30, 2009 UCC reviewed Licensed Master Social Worker ("LMSW") Tanner's CDC-7254 dated December 10, 2008, noting plaintiff refused the required medical evaluation by CMF Medical, and declined to cooperate and answer questions regarding the functional capacity/physical limitations evaluation process pursuant to the Armstrong Remedial Plan.  (Dkt. No. 81-1 at 3-4.)

10.  The July 30, 2009 UCC reviewed plaintiff's medical file, which indicated a diagnosis of asthma, arthritis of the knees and spine, and low back pain, which does not preclude a light duty, or sedentary type work assignment.

11.  At the July 30, 2009 review, plaintiff stated he would refuse any work or school assignments.  (Dkt. No. 81-1 at 4.)

12.  The July 30, 2009 UCC changed plaintiff's work status from MUA to Voluntarily Unassigned.

13.  On July 30, 2009, the UCC referred the matter to the Classification Staff Representative ("CSR"), recommending plaintiff be transferred to Lancaster ("LAC") or Kern Valley State Prison ("KVSP").

14.  On August 31, 2009, Classification Staff Representative ("CSR") S. Miller reviewed and endorsed plaintiff's transfer to Avenal State Prison ("ASP"), as the institutions recommended by the July 30, 2009 UCC were not available.  (Dkt. No. 81-1 at 6.)

1    15.  Plaintiff's original complaint was filed in this action on September 23, 2009.

2  (Dkt. No. 7.)  Plaintiff named K.L. Dickinson, D. Pappa, A. Tanner, T. Duncan, and K. May as

3  defendants.  (Dkt. No. 7 at 4.)

4    16.  On November 12, 2009, plaintiff filed an amended complaint in which he

5  added W.J. Sinkovich and J. Moss as named defendants.[4]  (Dkt. No. 16 at 4.)

6    17.  Plaintiff was transferred to ASP on December 23, 2009.

7    18.  On October 6, 2008, plaintiff requested transfer to a Level II facility and

8  medically unassigned status.  (Dkt. No. 81-1 at 3.)  This request was denied.  (Dkt. No. 91 at 3.)

9    19.  Defendant Sinkovich was a Correctional Counselor II Appeals Coordinator at

10  all relevant times.

11    20.  Plaintiff was advised of his right to appeal actions taken by the UCC on July

12  30, 2009.

13    21.  On August 16, 2009, plaintiff signed an administrative appeal (CMF-09-

14  2116) stating that the UCC discriminated against plaintiff by placing him on "C" status (changed

15  him from MUA to Voluntarily Unassigned).  (Dkt. No. 81-1 at 8.)

16    22.  On August 17, 2009, defendant Sinkovich sent the appeal to the Warden for

17  staff complaint determination.  On August 18, 2009, the Warden determined that the August 16,

18  2009 appeal did not qualify as a staff complaint, and would be routinely processed.  The

19  determination bears signatures by both defendant Sinkovich, CCII, Appeals Coordinator, and the

20  Warden.  (Dkt. No. 81-1 at 13.)

21    23.  The August 16, 2009 appeal was denied at the First Level of Review by

22  Associate Warden Moss, holding that an inmate who refuses to accept or perform in a

23  work/training assignment is deemed a program failure, can be placed on non-credit earning status

24  _____

25    [4]  Plaintiff did not re-name Dickinson and Moss as defendants in the October 7, 2010
second amended complaint.  (Dkt. No. 33.)  Defendant Tanner was dismissed on March 13,
26  2012.  (Dkt. No. 74.)

by the UCC and earn zero worktime credits.  (Dkt. No. 81-1 at 15-16.)  Plaintiff did not return

this appeal for second level review.  (Dkt. No. 81-1 at 9; 81-1 at 31.)

24.  On August 26, 2009, plaintiff signed a new appeal regarding his "C" status

placement by the UCC on July 30, 2009.  (Dkt. No. 81-1 at 18.)

25.  On August 28, 2009, defendant Sinkovich sent the appeal to the Warden for

staff complaint determination.  On September 1, 2009, the Warden determined that the August

26, 2009 appeal did not qualify as a staff complaint, and was duplicative of the August 16, 2009

appeal.  The determination bears signatures by both defendant Sinkovich, CCII, Appeals

Coordinator, and the Warden.  (Dkt. No. 81-1 at 22.)  On September 2, 2009, defendant

Sinkovich sent plaintiff a letter informing him that the August 26, 2009 appeal was screened out

as duplicative of CMF-09-2116, and that the Hiring Authority determined the appeal did not

meet the criteria for a response as a staff complaint.  (Dkt. No. 81-1 at 24.)

26.  Plaintiff did not know he was being transferred until the day of his transfer,

on December 23, 2009.  (Dkt. No. 33 at 10-11.)

27.  After learning of his transfer on December 23, 2009, plaintiff did not file a

timely appeal regarding his transfer, or regarding the alleged acts of retaliation by the named

defendants.  However, on January 5, 2010, plaintiff filed an appeal alleging that the UCC

members transferred him to ASP on December 23, 2009, in retaliation for plaintiff filing a

lawsuit against defendants, and that defendant Sinkovich was obstructing plaintiff's appeals.

(Dkt. No. 91 at 71.)  This appeal was screened out at the first level because plaintiff failed to

provide necessary copies of his chrono.  (Dkt. No. 91 at 75.)  The appeal was screened out at the

second level because too much time had passed.  (Id.)

28.  On December 23, 2010, the court ordered the U.S. Marshal to serve process

on defendants.  (Dkt. No. 39.)  On April 20, 2011, the U.S. Marshal filed Waivers of Service of

Process for defendants, signed by their attorney on April 18, 2011.  (Dkt. No. 47.)

////

1          C.  <u>Legal Standards</u>

2          "A prisoner suing prison officials under section 1983 for retaliation must allege

3 that he was retaliated against for exercising his constitutional rights and that the retaliatory action

4 does not advance legitimate penological goals, such as preserving institutional order and

5 discipline." <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (citing <u>Rizzo v. Dawson</u>, 778

6 F.2d 527, 532 (9th Cir. 1985)).

7          "[A] viable claim of First Amendment retaliation entails five basic elements:  (1)

8 An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

9 prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

10 Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

11 <u>Rhodes v. Robinson</u>, 408 F.3d 559, 568 (9th Cir. 2005).  Direct and tangible harm will support a

12 First Amendment retaliation claim even without demonstration of a chilling effect on the further

13 exercise of a prisoner's First Amendment rights.  <u>Id.</u> at 568, n.11.  "[A] plaintiff who fails to

14 allege a chilling effect may still state a claim if he alleges he suffered some other harm" as a

15 retaliatory adverse action.  <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009), citing <u>Rhodes</u>,

16 408 F.3d at 568 n.11.

17          A plaintiff must plead facts which suggest that retaliation for the exercise of

18 protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct.

19 <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989).  Mere conclusions of

20 hypothetical retaliation will not suffice; rather, a prisoner must "allege specific facts showing

21 retaliation because of the exercise of the prisoner's constitutional rights."  <u>Frazier v. Dubois</u>, 922

22 F.2d 560, 562, n.1 (10th Cir. 1990).  Retaliatory motive may be shown by the timing of the

23 allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence.

24 <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288-89 (9th Cir. 2003); <u>Pratt v. Rowland</u>, 65 F.3d 802, 808 (9th

25 Cir. 1995) .

26 ////

Once such a prima facie showing of retaliation is made, the burden shifts to the defendant prison officials to show, by a preponderance of the evidence, that the alleged retaliatory action was conduct narrowly tailored to serve a legitimate penological purpose. Schroeder v. McDonald, 55 F.3d 454, 461-62 (9th Cir. 1995).  However, "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right."  Bruce, 351 F.3d at 1289 (citations omitted).

D.  Analysis

Plaintiff concedes that he filed the instant lawsuit, and grievances against defendants, after the July 30, 2009 Annual Program Review by the UCC.  However, he claims that once defendants Pappa, May, and Duncan learned of the instant lawsuit, they transferred him on December 23, 2009, to "a punishment prison at Avenal."  (Dkt. 91 at 19.)  Plaintiff alleges defendant Sinkovich then attempted to cover up the retaliation by misprocessing grievances filed against defendants.  As discussed more fully below, plaintiff fails to adduce evidence suggesting that any of the named defendants acted with a retaliatory motive, or that they were connected in any way to plaintiff's transfer to ASP.

i.  Defendants Pappa, May, and Duncan

First, it is undisputed that at the July 30, 2009 UCC review, defendants Pappa, May, and Duncan recommended that plaintiff be transferred to LAC-II or KVSP-II.  There is no mention of transferring plaintiff to ASP in the July 30, 2009 UCC review.  Plaintiff claims that the UCC denied plaintiff's requested transfer at the Annual Program Review on July 30, 2009, without further elaboration.  (Dkt. No. 91 at 3.)  But the Annual Program Review report does not expressly state that plaintiff's requested transfer was denied.  (Dkt. No. 81-1 at 2-4.)  Liberally construed, a fair reading of the report reflects that plaintiff did not maintain the classification he ////

1  wanted.[5]  However, the record reflects that plaintiff requested a transfer, and defendants Pappa,

2  May, and Duncan recommended a transfer.

3  Thus, because defendants' July 30, 2009 actions pre-dated the filing of the instant

4  action, their recommendation that plaintiff be transferred could not be based on retaliation for

5  filing a lawsuit that had not yet been filed by plaintiff.  Similarly, their recommendation cannot

6  be viewed as a moving force in the ultimate transfer, because they were not aware of the

7  protected conduct at the time of their recommendation.

8  Second, defendants provided evidence that CSR Miller endorsed plaintiff for

9  transfer to ASP on August 31, 2009, and stated that the "[r]equested institutions are not currently

10  available.  (Dkt. No. 81-1 at 6.)  Plaintiff alleges that defendants Pappa, May, and Duncan

11  transferred plaintiff to the "punishment prison" ASP in retaliation for filing the instant lawsuit.

12  The Civil Rights Act under which this action was filed provides as follows:

13  Every person who, under color of [state law] . . . subjects, or causes
to be subjected, any citizen of the United States . . . to the
14  deprivation of any rights, privileges, or immunities secured by the
Constitution . . . shall be liable to the party injured in an action at
15  law, suit in equity, or other proper proceeding for redress.

16  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

17  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

18  Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend

19  § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976)

20  (no affirmative link between the incidents of police misconduct and the adoption of any plan or

21  policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects'

22  another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an

23  affirmative act, participates in another's affirmative acts or omits to perform an act which he is

24  _____

25  [5]  To the extent plaintiff contends that his requested transfer was denied because he was
not provided the MUA classification he requested, plaintiff's classification is not at issue here.
Plaintiff's challenge to the classification decision was dismissed on November 4, 2010.  (Dkt.
26  No. 34 at 2.)

1   legally required to do that causes the deprivation of which complaint is made." Johnson v.

2   Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

3            Here, plaintiff adduced no evidence rebutting the evidence that CSR Miller

4   endorsed plaintiff for transfer to ASP on August 31, 2009, and cited to no evidence connecting

5   defendants to CSR Miller, or to the selection of ASP as the transfer institution.  Although

6   defendants recommended plaintiff be transferred, they recommended that plaintiff be transferred

7   to LAC or KVSP, not ASP.  Plaintiff cites to no evidence linking these defendants with CSR

8   Miller or the decision to transfer plaintiff to ASP rather than LAC or KVSP.  Also, plaintiff

9   adduced no evidence demonstrating that either LAC or KVSP were available for plaintiff's

10  transfer as these defendants recommended.  Thus, plaintiff fails to demonstrate a link between

11  defendants and the August 31, 2009 endorsement for transfer to ASP.  Although plaintiff

12  describes an abrupt transfer on December 23, 2009, without notice, and resulting in a deprivation

13  of his property (dkt. no. 33 at 11), he provides no factual allegations or evidence demonstrating

14  that defendants Pappa, May, or Duncan were responsible for the December 23, 2009 transfer.[6]

15           Third, it appears that plaintiff's retaliation claims hinge solely on timing.  Plaintiff

16  claims that because he filed the instant complaint on September 23, 2009, and plaintiff was

17  transferred on December 23, 2009, such timing demonstrates that defendants retaliated against

18  plaintiff for filing the instant lawsuit.  Plaintiff specifically states:  "On December 23, 2009,

19  when defendants Pappa, May, and Duncan realized themselves that plaintiff was suing them, the

20  same day they transferred plaintiff to a punishment prison at Avenal prison [ASP]."  (Dkt. No. 91

21  at 19.)

22

23           [6] Prison officials have broad authority to hold a prisoner at a particular institution, or to
    transfer a prisoner to another institution.  Meachum v. Fano, 427 U.S. 215 (1976); Montanye v.
24  Haymes, 427 U.S. 236 (1976).  "[A] prisoner's liberty interests are sufficiently extinguished by
    his conviction that the state may generally confine or transfer him to any of its institutions,
    indeed, even to a prison in another state, without offending the Constitution."  Bravo v.
25  Hewchuck, 2006 WL 3618023, *1 (N.D. Cal. 2006) (citations omitted); see also Olim v.
    Wakinekona, 461 U.S. 238, 245-246 (1983) (interstate prison transfer does not, standing alone,
26  implicate Due Process Clause).

1       Retaliatory motive may be shown by the timing of the allegedly retaliatory act and

2  inconsistency with previous actions, as well as direct evidence.  Bruce, 351 F.3d at 1288-89;

3  Pratt, 65 F.3d at 808.  Although a retaliatory motive may be inferred from the timing and nature

4  of the alleged retaliatory activities, a mere allegation of a retaliatory motive is insufficient to

5  defeat a motion for summary judgment, see Taylor v. List, 880 F.2d 1040, 1045-46 (9th Cir.

6  1989) (finding conclusory allegations insufficient to establish that any individual prison official

7  acted in retaliation for protected conduct).

8       Defendants Duncan and Pappa declared that the UCC referred plaintiff to the CSR

9  for review and approval of a recommended transfer to LAC or KVSP, not to ASP; that CSR

10  Miller endorsed plaintiff for transfer to ASP on August 31, 2009, because LAC and KVSP were

11  not available; and defendants understand now that plaintiff was transferred to ASP four months

12  later.  (Dkt. No. 81-1 at 35, 39.)  Defendants provided documentary evidence confirming that

13  defendants recommended plaintiff be transferred to LAC or KVSP on July 30, 2009, and that

14  CSR Miller endorsed plaintiff for transfer to ASP on August 31, 2009.

15       Plaintiff failed to rebut this evidence.  As noted above, plaintiff adduced no

16  evidence connecting defendants Pappa, May or Duncan with the August 31, 2009 endorsement.

17  Similarly, plaintiff alleged no facts and adduced no evidence connecting these defendants to his

18  actual transfer on December 23, 2009.  Aside from plaintiff's conclusory statement that

19  defendants transferred him in retaliation for filing this lawsuit, plaintiff offers no factual or

20  evidentiary support for his claim, other than the timing of his physical transfer having occurred

21  after the filing of this action.  Absent a connection or link between these defendants and the

22  decision to transfer plaintiff to ASP, mere timing, without more, is insufficient.

23       The court has also reviewed the record as a whole in an effort to determine

24  whether the timing of events here provide sufficient circumstantial evidence to raise a dispute of

25  material fact as to whether the actions of defendants were motivated by retaliation.  Unlike the

26  prisoner in Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997), where the prisoner recounted

1   numerous facts from which an inference of retaliation could be raised, plaintiff has failed to point

2   to any facts from which an inference could be raised that demonstrate defendants Pappa, May,

3   and Duncan acted in retaliation.  See Hines, 108 F.3d at 268.  This court finds that timing,

4   without more, fails to suggest these defendants were motivated by retaliation for the filing of the

5   instant action.

6          Moreover, other than the above statement that defendants "realized . . . plaintiff

7   was suing them," plaintiff includes no factual allegations explaining how defendants Pappa, May,

8   and Duncan allegedly became aware of the instant lawsuit in 2009.  Plaintiff does not declare that

9   he mailed copies of the complaint to the named defendants.  None of his pleadings contain a

10  proof of service indicating he mailed them copies.  (Dkt. Nos. 16, 29, 33.)  Indeed, the record

11  reflects that plaintiff was required to amend his complaint on several occasions, and the U.S.

12  Marshal was not ordered to serve defendants until December 23, 2010, long after the August 31,

13  2009 endorsement for transfer.  (Dkt. No. 39.)  Counsel for defendants executed waivers of

14  service of process on April 18, 2011.  (Dkt. No. 47.)  Thus, the instant record suggests that

15  defendants received notice of this action sometime between December 23, 2010, and April 18,

16  2011.

17         Here, defendants' recommendations occurred prior to the filing of the lawsuit

18  plaintiff claims prompted the alleged retaliatory transfer.  Plaintiff failed to connect defendants to

19  the subsequent decision to transfer plaintiff to ASP, or to the December 23, 2009 transfer.

20  Finally, plaintiff failed to demonstrate a triable dispute of fact exists as to whether defendants

21  acted with a retaliatory motive.  In light of the above, defendants Pappa, May, and Duncan are

22  entitled to summary judgment.

23                      ii.  Defendant Sinkovich

24         Plaintiff alleges defendant Sinkovich attempted to cover up the alleged retaliation

25  by defendants Pappa, May, and Duncan, by allegedly misprocessing plaintiff's grievances.  First,

26  the court found no triable issue of fact as to whether defendants Pappa, May or Duncan retaliated

against plaintiff by transferring him to ASP, because CSR Miller endorsed plaintiff for transfer to ASP, and plaintiff alleged no facts and adduced no evidence suggesting these defendants were connected or linked to CSR Miller or the December 23, 2009 transfer.  If defendants Pappa, May and Duncan did not transfer plaintiff in retaliation for the instant lawsuit, there was nothing for defendant Sinkovich to "cover up."

Second, as argued by defendants, the appeals processed by defendant Sinkovich concerned plaintiff's classification status, not the transfer.  Thus, there is no connection between the subject matter of the appeals and plaintiff's challenge to his transfer.

Third, even if the appeals were related to the transfer, defendants adduced evidence demonstrating that defendant Sinkovich appropriately processed the appeals.  (Dkt. No. 81-1 at 31-32.)  Defendant Sinkovich routed the August 16, 2009 appeal (CMF-09-2116) to Chief Deputy Warden Swarthout to determine whether the appeal constituted a staff complaint.  (Dkt. No. 81-1 at 13.)  Based on Swarthout's determination that the appeal did not reflect a staff complaint, the appeal was forwarded for a first level response.  (Id. at 13.)  On September 25, 2009, Associate Warden Moss reviewed and denied the appeal.  (Id. at 15-16.)

Plaintiff did not request a second level review of appeal CMF-09-2116.  Instead, plaintiff filed a second appeal on August 26, 2009, again challenging the July 30, 2009 classification, but adding Warden K.L. Dickinson.  On August 28, 2009, defendant Sinkovich forwarded the second appeal to Swarthout to determine whether the appeal reflected a staff complaint.  (Id. at 22.)  The Warden's Office[7] determined the second appeal was not a staff complaint, and that the appeal should be rejected because it was a duplicate of plaintiff's appeal CMF-09-2116.  (Id. at 22.)  On September 2, 2009, defendant Sinkovich screened out plaintiff's second appeal at the second level because it was a duplicate of CMF-09-2116.  (Id. at 24.)

////

---

[7]  The form does not appear to be signed by Swarthout, but by a J.P. Gonzalez.  (Id.)

1    In his opposition, plaintiff concedes that the second appeal challenged the same

2  issue as the first appeal.  (Dkt. No. 91 at 17.)  Plaintiff does not explain why he didn't appeal

3  CMF-09-2116 to the second level of review.  Plaintiff does not explain how defendant Sinkovich

4  allegedly "misprocessed" plaintiff's appeals.  Plaintiff failed to rebut defendants' evidence that

5  defendant Sinkovich properly processed the appeals.

6    Finally, it appears defendant Sinkovich's role in handling these appeals was

7  complete before the filing of the original complaint on September 23, 2009.  Defendant

8  Sinkovich screened out plaintiff's second appeal on September 2, 2009, before plaintiff's lawsuit

9  was filed.  Because plaintiff alleges defendants Pappa, May, and Duncan retaliated against

10  plaintiff based on the filing of his complaint on September 23, 2009, defendant Sinkovich could

11  not have acted to cover up actions based on an event that had not yet occurred.

12    For all of the above reasons, defendant Sinkovich's motion for summary judgment

13  should be granted.

14  V.  Qualified Immunity

15    Alternatively, defendants contend they are entitled to qualified immunity.

16  Because plaintiff's claims against defendants lack merit, the court need not reach the defense of

17  qualified immunity upon which defendants seek summary judgment as well.  Cf. Saucier v. Katz,

18  533 U.S. 194, 201 (2001) (discussing two parts of qualified immunity analysis, including inquiry

19  as to whether facts establish violation of constitutional right).

20  VI.  Conclusion

21    Accordingly, IT IS HEREBY RECOMMENDED that:

22    1.  The motion for summary judgment filed by defendants Pappa, May, and

23  Duncan (dkt. no. 81) be granted; and

24    2.  Defendant Sinkovich's motion for summary judgment (dkt. no. 81) be granted.

25    These findings and recommendations are submitted to the United States District

26  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 12, 2013

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

arme0965.msj

16